IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Herbert Alonzo Robinson, | Case No. 8:13-cv-02109-RBH-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| Jill Wilson, Sergeant; Logan Fey; Al Cannon; Chief Lucas; and Stephanie Singleton, | |
| Defendants. | |

This matter is before the Court on Defendants' motion to dismiss or, in the alternative, for summary judgment. [Doc. 28.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983, and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, brings this action against Sergeant Jill Wilson ("Wilson"), Logan Fey ("Fey"), Sheriff Al Cannon ("Cannon"), Chief Lucas ("Lucas"), and Stephanie Singleton ("Singleton"). [Docs. 1, 11, 12.] Defendants filed their motion to dismiss or, in the alternative, for summary judgment on October 23, 2013. [Doc. 28.] By Order filed the same day pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 30.] Plaintiff filed a response in opposition on November 18, 2013 [Doc. 34], and Defendants replied on December 2, 2013 [Doc. 36]. The motion is ripe for review.

**BACKGROUND**

Plaintiff, who was confined at the Allendale Correctional Institution ("Allendale") at the time he filed his Complaint,[1] filed this action generally alleging constitutional violations for denial of due process and denial of access to the courts. [Doc. 1.] On September 5, 2013, Plaintiff filed what he captioned a "motion to amend & file supplemental complaint" and a proposed Amended Complaint, which the Clerk of Court correctly filed as a supplement to the complaint and an Amended Complaint because Plaintiff could amend the Complaint once as a matter of course pursuant to Rule 15. [Docs. 11, 12.] Thus, the Court will look at the Complaint [Doc. 1], the supplement [Doc. 11], and the Amended Complaint [Doc. 12] as setting forth Plaintiff's allegations in this case.

In the Complaint, Plaintiff references his previous case, 8:11-cv-02285-RBH-JDA ("the 2011 Case"), and notes that it was dismissed for failure to exhaust administrative remedies. [Doc. 1 at 1.] Plaintiff also acknowledges that the underlying facts in the present case are the same as those in his previous case, relating to Defendants' taking legal materials from Plaintiff's cell when he was a pretrial detainee at the Charleston County Detention Center ("CCDC") and failure to process grievances.[2] [Docs. 1, 11, 12.] Plaintiff asks the Court to order Defendants to render final disposition of his grievances and

---

[1] Plaintiff is currently confined at the MacDougal Correctional Institution ("MacDougal"). [*See* Doc. 33 (notice of change of address).]

[2] The Court notes, however, that some of the Defendants in the two cases are different. Additionally, the Court notes that Singleton was summarily dismissed from the 2011 Case because a claim for failure to process grievances is not cognizable under § 1983. *Robinson v. Wilson*, C/A No. 8:11-02285-RBH-JDA, 2011 WL 7069559 (D.S.C. Dec. 19, 2011), *Report and Recommendation adopted by* 2012 WL 174800 (D.S.C. Jan. 20, 2012). However, in the present case, liberally construing Plaintiff's pleadings, Plaintiff not only alleges that Singleton failed to process his grievances but also that she was involved with Cannon and Lucas in hindering his attempts to exhaust his claims within the prison grievance process and, thus, denying Plaintiff access to the courts. [Doc. 12.]

2

to decide his case on the merits [Doc. 1 at 7]; to hold Cannon, Lucas, and Singleton legally liable for conspiracy and/or retaliation for preventing Plaintiff "from getting the relief sought after by deliberately withholding discovery documentation or responding to them in an effort to cause Plaintiff to lose his bona fi[de] lawsuit involving them"; for damages against Cannon and Lucas jointly and severally in the amount of $50,000 and against Singleton in the amount of $25,000; and for a preliminary injunction and/or temporary restraining order [Doc. 12 at 12–13].

## **APPLICABLE LAW**

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by

> governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can

prove no set of facts which would support her claim and entitle her to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

## DISCUSSION

**Claims for Injunctive and/or Declaratory Relief are Moot**

As an initial matter, because Plaintiff is no longer incarcerated at CCDC or Allendale [*see* Doc. 33 ( notice of change of address, indicating Plaintiff is now at MacDougal)], his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *See Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his transfer from CCDC, *see id.*, and, as public officials, Defendants are

subject to suit for damages in their individual capacities[3] in a § 1983 lawsuit, *see Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).

**Failure to Exhaust Administrative Remedies**

Defendants contend the case should be dismissed for failure to exhaust administrative remedies. [Doc. 28.] The Court agrees.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately

---

[3] To the extent Plaintiff brings this suit against Defendants in their official capacities under § 1983, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities under § 1983, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

7

> brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; an inmate must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre*

8

*v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007);  *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint.  *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005).  However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust.  *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex,* 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

Plaintiff admits that the underlying facts with respect to this case are the same as those in the 2011 Case, which was dismissed for failure to exhaust administrative remedies.  As noted in the 2011 Case,[4]

> CCDC has a grievance procedure available to all detainees, which is set forth in the Sheriff Al Cannon Detention Center Inmate Orientation Handbook ("the Orientation Handbook") along with other rules governing detainees confined in CCDC. Plaintiff received a copy of the Orientation Handbook upon his

---

[4]It is appropriate for this Court to take judicial notice of Plaintiff's prior cases.  *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

9

> admission to CCDC and, on October 25, 2010, Plaintiff signed the CCDC Classification Interview Form, which states, "I HAVE RECEIVED A COPY OF THE CHARLESTON COUNTY DETENTION CENTER RULES AND REGULATIONS AND I AGREE TO ABIDE BY THESE RULES. I HAVE ALSO RECEIVED A COPY OF THE INMATE PROPERTY DISCLAIMERS FORM." The grievance procedure provides that detainees may file a grievance within five days of a grievable event by completing an Inmate Grievance form or calling the Inmate Grievance Hotline. Detainees have five days after receipt of the notice of decision to appeal to the next level.

*Robinson v. Wilson*, No. 8:11-cv-02285-RBH-JDA, 2012 WL 3294441, at *5 (D.S.C. Jul. 9, 2012) (internal citations omitted), *Report and Recommendation adopted by* 2012 WL 3264874 (Aug. 9, 2012).

> Listed below are the grievance numbers, file dates, and resolution dates [of the grievances Plaintiff filed with respect to the allegations in the 2011 Case Complaint]:
>
> | Grievance number | File date | Resolution date |
> |---|---|---|
> | #34523 | 8/13/11 | 8/25/11 |
> | #34525 | 8/13/11 | 8/14/11 |
> | #34731 | 8/14/11 | 8/14/11 |
> | #35069 | 8/15/11 | 8/26/11 |
> | #34846 | 8/15/11 | 8/26/11 |
> | #35295 | 8/16/11 | 8/26/11 |
> | #37135 | 8/22/11 | 8/25/11 |
> | #37245 | 8/22/11 | 8/23/11 |
> | #38552 | 8/26/11 | 8/26/11 |
> | #39216 | 8/28/11 | 8/29/11 |
> | #39986 | 8/30/11 | Forwarded to floor sgt |
> | #41260 | 9/3/11 | 9/4/11 |
> | #42187 | 9/6/11 | 9/27/11 |
> | #43883 | 9/11/11 | 9/16/11 |
> | #45367 | 9/16/11 | 9/23/11 |
> | #45686 | 9/16/11 | 9/30/11 |
>
> Instead of waiting for a resolution of each grievance, Plaintiff would file another one immediately concerning the same incident(s). Then, after he received the resolution he did

10

> not appeal but started over with a new grievance. He states that he does not know how to appeal, but does not allege that he called the Inmate Grievance Hotline. He has not shown that the process is futile. It is clear that he has not exhausted his administrative remedies. His statement on his initial grievance form that he wishes to appeal to the Chief Jail Administrator was premature and was made before he had even received a response to that grievance. This would not constitute "proper exhaustion" under *Woodford* [*v. Ngo*, 548 U.S. 81, 90 (2006)].

*Robinson v. Wilson*, C/A No. 8:11-cv-02285-RBH, 2012 WL 3264874, at *4 (D.S.C. Aug. 9, 2012) (footnote omitted).

In the instant case, Plaintiff alleges that he submitted a "Request to Appeal - Grievance Numbers: 43883 and 34523 or Final Disposition," dated May 23, 2013, to the Sheriff Al Cannon Detention Center and has included a copy of the request. [Docs. 1 at 6; 1-4; 12 at 10.] In the request, Plaintiff sought to obtain the "final disposition regarding exhaustion" of grievance numbers 43883 and 34523." [Doc. 1-4 at 1.] Plaintiff stated, "Your disposition that my Administrative Remedies with you have been Exhausted or my Appeal with you is "[completed with you]" will suffice, or allowing me to: complete your Grievance process." [*Id.* (alterations in original).] As noted in the 2011 case, grievance number 34523 was filed on August 13, 2011, and resolved on August 25, 2011, and grievance number 43883 was filed on September 11, 2011, and resolved on September 16, 2011. *Robinson*, 2012 WL 3264874, at *4. As this Court found in the 2011 Case, Plaintiff failed to follow the CCDC grievance procedure, which provides that detainees have five days after receipt of the notice of decision to appeal to the next level. *See Robinson*, 2012 WL 3294441, at *5. Instead, Plaintiff now argues that he attempted to exhaust his administrative remedies by submitting a request to appeal over twenty months after the

11

grievances were resolved. However, this does not constitute "proper exhaustion" under *Woodford*, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Although Plaintiff argues that the prison officials are deliberately trying to prevent the court from ruling on the merits [Doc. 1 at 6] and that his efforts to exhaust administrative remedies are futile [*id.* at 3], Plaintiff has failed to establish that his efforts are futile because he has failed to show that he properly exhausted his administrative remedies by appealing any grievance within five days after receipt of the notice of decision, as required by the CCDC grievance procedure. Accordingly, Defendants' motion to dismiss should be granted based on Plaintiff's failure to exhaust administrative remedies.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion to dismiss be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

July 10, 2014
Greenville, South Carolina

12